Heiliger against Collins and Askew. Good morning. May it please the court. My name is Fiona Kaye. I am appointed pro bono counsel for Derek Heiliger, the plaintiff appellant. I'd like to reserve two minutes of my time for rebuttal. Mr. Heiliger's Fourth Amendment rights against unreasonable seizure were violated when he was arrested without a warrant on September 12, 2010. The officers did not have actual nor arguable probable cause to arrest him. And of course, the charges against him that served as the basis for this unlawful arrest were ultimately dismissed. The district court was wrong in granting summary judgment on Mr. Heiliger's false arrest claims for three reasons. First, the officers relied solely on the statement of a highly intoxicated witness in arresting Mr. Heiliger. But the law is clear that officers do not have probable cause when their only source of information is incompetent, as this highly intoxicated witness was. It is undisputed that the statement here came from a witness in hospital admitted with a blood alcohol level of .25, which is over three times the legal limit in New York, and he was observed by law enforcement as making random spontaneous statements. No reasonable officer could have believed that a statement from a drunken witness would be sufficient to establish probable cause. The argument to the contrary that's made is that the information provided was detailed, rather than general, and that it comported in some specific ways with information already known by the officers about the crime. Why doesn't that resolve the reliability concerns that you've identified? It doesn't resolve the reliability concerns. First, I don't believe that it confirmed information known to the officers about the incident. And secondly, just the fact that the intoxicated witness spoke at length, potentially, here should not clear any doubts about the veracity of that witness. Was Heidegger a suspect in the Kanonis shooting at that time? The record before the district court does not show whether he was a suspect at the time of his arrest. He was convicted of it though, right? Later? He was convicted of it well after the arrests at issue, your honor. And the idea behind the attack was that he was informing the plaintiff here for the Kanonis shooting, right? Wasn't that the story that came through? I believe the story, your honor, is that the statement at JA 379 is that Mr. Herbert states that he was approached by a group of individuals and that he was... He was talking about Bobby Womack, who's the same guy, right? Yes, your honor. However... Help us a bit. You were referring to JA 379? Yes. Which I now have before me. Tell me what exactly... Where should I look and why should I look there? Your honor, this is the statement of Herbert while in the hospital with the very high blood alcohol level and taken by what may be officer Peters. And this is a supporting deposition against George Levy and David Holmes, not against Mr. Heidegger. This statement says nothing to the effect that if Mr. Heidegger were even identified in this statement, it merely states that he was present, not that he was an assailant in this assault. And so... He said that Dee and the other guys had their knives out. Isn't Dee Swish in that same person? At the time of this statement, your honor, there is no record evidence before the district court that this was known to the officers at the time. Moreover... You referred to him as Dee in the videotaped interview? In the videotaped interview, yes, your honor. That is after his arrest. You see, what I'm having problems with though is not whether what the officers knew corroborated in every extent, but whether what they knew based on what he then told them suggested that his intoxication was not precluding him from making a reliable statement. Now, you know, in addition to what was just pointed out, he identified his attackers by their nicknames, Nook, Stiles, Swish, and YG. The officers were already familiar with those individuals and knew they were associates. That hardly suggests someone whose intoxication is precluding them from making cogent statements. And that, I thought, was the thrust of the unreliability that he's just not compus mentis. This is all belying that. What's your argument that I may be missing in that regard? Your honor, respectfully, I don't believe that naming individuals that may or may not be known to the police at the time as being present at the scene of an assault is sufficient to give them a reasonable belief that Mr. Heiliger specifically was committing or had committed an offense. The law is clear... Are you saying that what the witness said, forget about his intoxication, wasn't sufficient to support probable cause? Correct. There are two reasons why it was not sufficient to support probable cause or even arguable probable cause. The first is the intoxication... No, no, that's a separate question. I'm now saying if this were made by a stone-sober person, are you arguing that it's insufficient to establish probable cause? Yes, your honor. Tell me why. It is insufficient because no reasonable officer would believe that a statement that Swish was present was sufficient to go and arrest Mr. Heiliger for an assault-related offense. I explained they had their knives out and he was a victim of a knife attack. In the case of... Yes, in the case of Fellmine v. City of New York, cited in the brief, even there when the putative victim had given a photo identification of the falsely arrested plaintiff, and even when he had said that he had an object in his hand, that was not sufficient to establish probable cause. At the time, though, at the time the arresting officers... At the time the officers made the arrest, they knew the plaintiff as D. So that wasn't an issue anymore and they knew weeks prior to his arrest that the plaintiff was involved in a shooting at Glow's Restaurant. Your honor, I don't think that's clear from the record and even if it were, that doesn't mean that a statement from a highly intoxicated witness claiming that that person was present at the scene of a chaotic fight would mean that they had probable cause to arrest. The officers could have taken any number of steps to corroborate the statement. Indeed, the witness himself even suggested such a step. Herbert said that some of his people were at the scene of the alleged assault and if he talked to them, he could find out more about what happened. But the officers took no steps. They went and arrested Mr. Heiliger for an assault and... Was that by Dee's photograph, too? Is that just... Are you arguing it's just a snapshot on the 12th and what he did on the 13th doesn't matter? Well, first of all, the statement after the arrest should not be taken into account as to whether there was probable cause and even in that second statement, even if you had that, which they didn't, that still does no more than establish that Mr. Heiliger may have been present at the scene. Before you finish, let me ask you a couple of questions just to make sure that I understand the record. This is somewhat confusing history of this appeal. Can you clarify precisely which parties and which claims are still at issue on this appeal? Yes, Your Honor. Mr. Heiliger has appealed the Fourth Amendment claims pursuant to 42 U.S.C. 1983 against officers Woody, Peters, Hawley, DeAngelo, and Akshar. And then he also has state law false arrest claims against those same officers as well as the city of Binghamton and Broome County. So he's got two... All he's got left is the two false arrest claims under 1983 for the assault and the destruction of evidence and then the corollary state claim, right? Yes, that's right, Your Honor. So it's Peters, Woody, Akshar, Hawley. Did you mention DeAngelo? Yes. Yes, okay. City of Binghamton and Broome County. And then the others, which are quite numerous, are merely defendants. They're listed... They're not at police. Okay. Just a clerical question, really, regarding the arrest for tampering with evidence. Mr. Heiliger was arrested pursuant to a warrant. Is that right? The defendants did not rely on the warrant in their papers and therefore the arrest should be considered under the warrantless arrest standard. That's the case of Arnold v. Gary cited in our papers. Okay. Thanks very much. You've reserved two minutes. Thank you. May it please the court. My name is Brian Seekers and I represent the City of Binghamton. Investigators DeAngelo, Hawley, Woody, and Peters. We ask this court to affirm the decision of the Northern District of New York because it properly found that plaintiff failed to present admissible evidence as opposed to bold speculation, creating any question of fact as to whether there was probable cause for his arrest on September 12, 2010, and for a later charge of tampering with physical evidence for the destruction of his phone. What's your view on the tampering evidence charge? Was Mr. Heiliger arrested on that charge pursuant to an arrest warrant? Are you relying in any sense on that? He was arrested pursuant to a warrant. I believe that if you look at the information that was cited, which is filed by Woody, which I believe is in the record at either JA 407 or 421, it says that they were praying for or requesting a warrant and they arrested him at that time. And I believe that also explains the delay between the time the information was filed and the time he was actually arraigned on it. The officers filed it with the city court. He's being held on other charges in the Broome County Jail. It's a matter of when the city court issues an order to reduce him, to bring him down to the jail for arraignment. It would explain the time lapse there. All of the basis for that arrest is that his phone breaking was deliberate rather than accidental. What's the evidentiary basis for that? Well, Your Honor, they collected the phone in two pieces. They have photographs of it being in two pieces. He identified it as being in two pieces. They saw him talking on the phone just before they... Help me out. What's the basis for thinking that it was deliberately broken rather than accidentally broken? Well, Your Honor, it was a flip phone and it was separated at the hinge. And I would submit to you that phones, flip phones especially, are not made to come apart at the hinge very easily. It's something that takes a great deal of force and effort. And on his appeal, his statement to you, to the court when he was doing his appeal, was that phone is my personal property and no one besides myself can dictate by law whether I decide to break or smash my own cellular phone. I paid for it. It's mine. I believe that it's pretty clear to the officers that he deliberately broke the phone. He was talking to it as they rolled up. They yelled swish for him to get down. He goes down to the ground and the phone is broken when they pull him up off the ground. And you heard opposing Ms. Kay's response to my earlier question. How do you respond to that? She seems to suggest that it's not relevant here at all, that you're not relying in any way on this. Your Honor, I believe that she correctly states we did not explicitly make that argument, but we did submit the paperwork to the court that it was on that basis. Okay. For the phone charge, can we rely on the Becker affidavit? His former girlfriend said that he destroyed it so he wouldn't have the evidence. Is that relevant for us or is it just helpful to you? It's helpful to me, but in many respects, I understand the court's concern with that because that clearly was a statement given well after the actual arrest. However, it's confirmatory that what the officers suspected was actually true. His own testimony at depositions made the same. He alluded to the same facts. In regards to the level of intoxication of Mr. and the role it plays and whether there's a probable cause, I believe the flaw in the argument is that it really regards on speculation as to what effect the .25 alcohol had on Mr. Herbert. Is that his handwriting for the statement, by the way? Say that again? Is that his handwriting in his statement? Did he write it? Your Honor, I do not know whether that is his handwriting or not. I suspect that it is the officer's handwriting and that the signatures and the CB initialing the change on the top of the second page are his handwriting. He gave a clear and accurate statement of events and he gave facts that support this. He admitted that his plaintiff has admitted that he is Swish or D and that he used that alias and that he's now in prison for shooting the man at Glow's. He admits that the officer shouted Swish, his name, when they arrested him that morning. Investigator Woody knew plaintiff as D because he said, D, how long have I known you? He said, since you arrested my brother. His brother is Sonny Robert Wilson, Sonny Blood. That happened in 2004. There's actually a Northern District case on that arrest as well. It was Woody that arrested him that day. Woody knew plaintiff as D because on 12 days beforehand, Quinn Yonas, the victim of the shooting at Victoria's, identified him as D. And in addition, there was the wiretap information that Mr. Hawley had gathered in which he describes the conversation that takes place as the guy was standing right there when Swizzy, or Sonny's brother, Swizzy, and then in parentheses, Officer Hawley put in Derek Halinger. Just clapped the light-skinned chubby and then he uses a racial slur. In addition, at the appellate docket, page 60, docket 71, pages 67, 68, and 82, there's the criminal history and also the investigative report from the Quinn Yonas shooting which lists his nicknames or aliases as Cool D, D, and Double D. I think also relevant to the fact that these officers, or the plaintiff admits that these officers most likely knew who he was, are the allegations in the amended complaint itself. In paragraphs 101 and 102 and 161, he alleges that Binghamton police officers walked past him as he was walking into the hospital to visit YG. And that because they walked by him, they should know that there was an alibi for the stabbing. Now, it occurred after the stabbing had taken place, so it's not an alibi. But implicit in that is, they know who I am and when they walk by me, they know who I am and they know me by name. Therefore, they should be with alibis for me. I mean, there's another allegation of that. His argument below and in his initial brief to this court was that he speculated that the city had obtained Herbert's statement simply through coercion and that they had basically written this for them and given him the sign. It makes no sense to put Swish and YD, and Swish, D, and the D who shot the guy as it flows if the officers don't know who that is. Implicit in his allegation of coercion, just put those in there, is an admission that they know who Swish and Y, and D is, or are. And for all these reasons, Your Honor, we believe that the Northern District's decision should be affirmed. Thank you. Thank you very much. As for the tampering charge, your question, Judge Raji, about whether it was deliberate that his phone broke. This scene, construed in the light most favorable to Mr. Heileger, shows that multiple officers, without identifying themselves, approached with their guns drawn, yelling at Mr. Heileger to get down on the ground, or they would shoot him. And he panicked, and while complying with the order to get down on the ground, his phone broke. We respectfully submit that at summary judgment, it was inappropriate to grant in favor of the defendants, as there are disputed material facts. As for the- Let me ask you. Yes. The issue is a little different, because they had a warrant, right? Your Honor, we respectfully submit again that the warrant should not be considered. I don't think my opposing counsel had a response on the fact that they had not relied on it in their summary judgment papers. And therefore, this should be considered under the warrantless arrest standard. And then, just briefly addressing Herbert's September 12th statement. Again, as opposing counsel identified, it refers to both Dee and Swish as if they are two different people, which suggests confusion or could suggest drunkenness. A jury could take that into account in determining whether it was reasonable to rely on Herbert's statement. There are also inconsistencies between the pre-arrest statement and the post-arrest statement that suggest that the witness was simply not credible. And he no longer names Dee in the September 13th statement. Again, I would end by noting that officers of reasonable competence would have to agree that if you get a drunken statement claiming that an individual was present at the scene of a crime, that does not amount to probable cause to arrest and additional steps should have been taken. We would respectfully request that the court vacate the summary judgment on Mr. Heidegger's false arrest claims and remand to the district court for further proceedings. Thank you. It was well argued and we appreciate very much your having taken this assignment. Thank you very much. We'll reserve decision.